JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} This is an appeal from a judgment granting attorney fees for legal services rendered to the guardianship estate of Martin Hughes. Guardian-appellant, Carl Hughes, challenges the jurisdiction of the court to grant the fees and the amount of the fees allowed by the court. Appellee and cross-appellant, the law offices of Squire Pierre-Louis LLC ("S P"), appeals the probate court's denial of certain fees for which it applied.[1] For the reasons set forth below, we affirm the judgment of the probate court.
 {¶ 2} Martin J. Hughes, Jr. was on the board of the United Telephone Credit Union ("UTCU"). In 2003, Martin Hughes was adjudged incompetent by the Cuyahoga County Court of Common Pleas, Probate Division ("probate court").[2] On September 25, 2003, the probate court appointed Carl Hughes guardian of the person and estate of his father, Martin Hughes.
 {¶ 3} As guardian, Hughes retained S P to perform legal services on behalf of the guardianship. Through July 2005, the members of S P were attorneys Percy Squire and Lloyd Pierre-Louis. Percy Squire was a long time friend of Martin Hughes and had represented him and members of the Hughes family for many years prior to forming the association with Pierre-Louis. Percy Squire did not make an *Page 4 
appearance in this action. Pierre-Louis appeared in the action and submitted fee applications for S P in the amount of $300,282.50. He also submitted fee applications for work he performed under Pierre-Louis and Associates ("P A") in the amount of $12,475. The fee requests were for legal representation of the guardian and/or the ward in a number of different litigation matters between February 2003 and the end of 2005.
 {¶ 4} Martin Hughes died on March 8, 2006. The probate court continued a hearing date that had been previously scheduled for March 22, 2006 on the fee applications. On March 27, 2006, the guardian filed a motion to dismiss the fee applications on the grounds that death terminated the guardianship and divested the probate court of jurisdiction to grant the fees. In May 2006, the court overruled the motion to dismiss the fee applications. The probate court conducted a two-day hearing on the merits of the applications on August 21-22, 2006. On November 9, 2006, the probate court issued its judgment entry and its findings of fact and conclusions of law. In the judgment entry, the probate court awarded legal fees to S P in the amount of $84,474 for services provided to the guardianship. The court found the guardianship was not obligated to P A and awarded no fees on its application.
 {¶ 5} In determining fee awards, the probate court issued a 25-page decision in which it identified five litigation matters for which S P and P A had submitted *Page 5 
fee applications. The court considered each matter separately and found the pertinent facts to be as follows:
 {¶ 6} 1. The "Credit Union Cases" are a combined number of civil actions brought to challenge the appointment of a conservator over the United Telephone Credit Union. Prior to being adjudged incompetent, Martin Hughes hired Percy Squire to represent the credit union in the first case. Neither Martin Hughes nor the guardianship was a party to the suits. Lloyd Pierre-Louis represented to Carl Hughes that S P would not be billing the guardianship for legal fees in these cases.
 {¶ 7} 2. "The American Mutual Share Insurance Co. Case," is an action in which S P represented the guardian and the ward, who were named party defendants. The action sought damages against the ward and guardian in excess of two million dollars. The guardian authorized the representation.
 {¶ 8} 3. "The Doug White Case" is a civil rights and ERISA lawsuit brought on behalf of the guardianship. The action included claims for disability benefits, spousal death benefits, and deferred compensation that totaled 2.3 million dollars. The case also included defense of a two million-dollar counterclaim against the guardian and the ward.
 {¶ 9} 4. The "Removal of Martin J. Hughes" matter involved an administrative action to remove the ward as director and officer of UTCU. The ward authorized S P's representation before adjudication of incompetency, and the *Page 6 
guardian approved the representation thereafter. S P claimed a flat fee for this representation.
 {¶ 10} 5. The "Combined Hughes Matters" were miscellaneous litigation matters in which attorney Pierre-Louis submitted fees under P A for representation after July of 2005.
 {¶ 11} The probate court found that the guardianship benefitted from the services of attorney Lloyd Pierre-Louis in both the American Mutual Share Insurance Co. case and the Doug White case. The court determined that Lloyd Pierre-Louis expended a total of 309.7 hours of billable time on these matters. Additionally, the court found 74.2 hours of paralegal time was expended. Because there was no written fee agreement between S P and the guardian, the probate court found a reasonable hourly rate to be $250 per hour for attorney time and $95 per hour for paralegal time. Based upon these findings, the court made its award of $84,474 to S P.
 {¶ 12} The court awarded no legal fees to S P or P A for the Credit Union Cases, the Removal of Martin J. Hughes matter, or the Combined Hughes Matters.
 The Guardian's Appeal {¶ 13} Carl Hughes appeals on behalf of the guardianship estate and raises four assignments of error for review. In the first assignment, he argues that the probate court was without jurisdiction to award attorney fees after the death of the ward and therefore the November 9, 2006 judgment entry is void ab initio. *Page 7 
 {¶ 14} In Ohio, probate courts are courts of limited jurisdiction and are permitted to exercise only the authority granted to them by statute and by the Ohio Constitution. Corron v. Corron (1988),40 Ohio St. 3d 75, 77. R.C. 2101.24 (A)(1)(e) grants the probate court exclusive jurisdiction to appoint and remove guardians, to direct and control their conduct, and to settle their accounts.
 {¶ 15} Generally, the death of the ward terminates all duties and powers upon the part of the guardian. Simpson v. Holmes (1922),106 Ohio St. 437, syllabus. However, even after the guardianship ends, "a guardian has the power after the ward's death to make a proper accounting and settlement of any acts taken in regard to the ward's assets." State ex rel. Estate of Hards v. Klammer, 110 Ohio St.3d 104,2006-Ohio-3670, _12. Therefore, the jurisdiction of the probate court over a guardianship estate does not completely terminate immediately after the ward's death. Id. at _12. "[T]hose powers and duties necessarily involved in the proper accounting and settlement of the [guardianship] continue." State ex rel. Beedle v. Kiracofe (1964),176 Ohio St. 149, 151.
 {¶ 16} Hughes argues that the recent Ohio Supreme Court decision inIn re Guardianship of Hollins, 114 Ohio St.3d 434, 2007-Ohio-455, supports his position that the probate court was without jurisdiction to award attorney fees in this case. We disagree.
 {¶ 17} In Hollins, the issue before the court was whether the probate court had the authority to approve a settlement in a medical malpractice case litigated on *Page 8 
behalf of a minor ward after the ward reached the age of majority. The court determined that the probate court lacked authority to approve such a settlement holding: "When a guardianship is predicated exclusively on a ward's minor status, the guardian's power and the probate court's jurisdiction both terminate when the ward reaches the age of majority." Id. at syllabus. The facts in the case at bar are distinctly different from those in Hollins.
 {¶ 18} The Hollins court did not state that the probate court lost all jurisdiction upon the termination of the guardianship. Neither did the supreme court overrule its previous decision in State ex rel. Estate ofHards v. Klammer. The court clarified its holding in that case, saying, "in Klammer, we simply determined that once a guardianship ceases to exist, a probate court retains jurisdiction for the limited purpose of settling the guardian's final accounting." Id. at _29.
 {¶ 19} The fees at issue in the case at bar are legal fees permitted by law and filed pursuant to the Rules of Superintendence for the Courts of Ohio and the local rules of the Cuyahoga County Court of Common Pleas, Probate Division. The fees were awarded by the probate court as part of the expenses of the guardianship estate. The probate court retained jurisdiction, as part of settling the final accounting of the guardianship, to determine whether an award of attorney fees was merited and, if so, the amount. See Sup.R. 71 and Loc.R. 71.1. *Page 9 
 {¶ 20} Having determined that the probate court retained jurisdiction to consider the award of attorney fees, appellant's first assignment of error is overruled.
 {¶ 21} In his remaining three assignments of error, Hughes challenges the amount of the award of attorney fees to S P. Hughes contends that the judgment of the probate court is against the manifest weight of the evidence and that the trial court erred in failing to apply prior payments, made out of guardianship funds and by the guardian personally, to the claimed legal fees.
 {¶ 22} Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.CE. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, at the syllabus. The trial court is in the best position to weigh the credibility of the witnesses and the evidence presented, thus an appellate court is guided by the presumption that the findings of the trier of fact were correct. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 461 N.E.2d 1273. An appellate court may not substitute its judgment for that of the trial court. Columbia Oldsmobile, Inc. v.Montgomery (1990), 56 Ohio St.3d 60, 564 N.E.2d 455.
 {¶ 23} R.C. 2111.14 authorizes a guardian of the estate of a ward to employ legal counsel to initiate or defend a lawsuit on behalf of the estate or ward. In re Guardianship of Wonderly (1984), 10 Ohio St.3d 40. The attendant legal expenses, *Page 10 
including attorney fees and court costs, may be recovered from the assets of the estate. Id. Before awarding legal fees, the probate court must apply a three-part test "to determine whether the attorney acted in good faith, whether the services performed were in the nature of necessities, and whether the attorney's actions benefitted the guardianship." In re Guardianship of Allen, 50 Ohio St.3d 142, 146
(internal citations omitted). The probate court's decision to allow "reasonable attorney fees" is a matter left within its sound discretion.Estate of Poole v. Conwell, Cuyahoga App. No. 88414, 2007-Ohio-2510 at _25.
 {¶ 24} A review of the probate court's decision and entry reveals that it took into account the considerations in effect at that time as set forth in Ohio Sup.R.71, Ohio Code Prof.Resp. DR 2-106, and the three-part test in In re Guardianship of Allen, supra, before deciding to award reasonable attorney fees to S P. The record demonstrates that the court considered the detailed itemized invoices appellee provided in support of its application for fees. Additionally, appellee provided the court with copies of pleadings and motions to demonstrate the complexity and nature of the underlying legal work. The court also considered evidence presented by appellant and appellant's witnesses to support their claim that the legal fees had already been paid. The probate court's hearing on the matter took two days to complete. The record indicates that the probate court carefully scrutinized the proposed fees to ensure accuracy of its award. *Page 11 
 {¶ 25} Appellant argues that the probate court disregarded evidence of payments made to S P. We disagree. The record demonstrates that there was a long and close relationship between the Hughes family and Percy Squire. The evidence reveals most of the disputed payments were made by Carl Hughes, individually by personal check, and by his brother Martin Hughes III. These payments were made to Percy Squire, to Squire's creditors, to Squire's employees, to Percy Squire, Esq., LLC and to S P without court approval. Only one payment, in the amount of $50,000, was made to S P from guardianship funds with the approval of the probate court. Carl Hughes testified that he knew he needed court approval prior to making payments but made them personally, without detailed bills and without prior approval, because Percy Squire "had an urgent need for money." Hughes stated that he gave Squire the money knowing that he ran the risk that the court might not approve the money expended as legitimate guardianship expenses.
 {¶ 26} While the invoices listed specific dates, times and activities for Percy Squire, attorney Squire did not testify in the action and so did not substantiate the entries for his time as shown in the invoices. The probate court therefore did not give any credence to claims against the guardianship for fees based upon time Percy Squire allegedly spent working on guardianship affairs. Likewise, the court did not recognize payments made to Percy Squire or S P for matters allegedly for the benefit of the guardianship but without prior court approval. At the hearing, the court *Page 12 
expressed dismay at the willingness of Carl Hughes to pay Percy Squire for services without billings.
 {¶ 27} Attorney Lloyd Pierre-Louis provided competent and credible evidence of the services he provided and demonstrated that those services were necessary and benefitted the guardianship estate. The probate court carefully considered Pierre-Louis' requests. The court also carefully considered appellant's evidence of payments before deciding the amount of reasonable fees to be awarded. The record in this case fails to reflect that the probate court abused its discretion or that the award was against the manifest weight of the evidence. Appellant's second and third assignments of error are overruled.
 The Attorney's Appeal {¶ 28} The law offices of Squire Pierre-Louis seeks affirmance of the probate court's award of fees, but challenges the court's refusal to award fees based upon time allegedly expended by attorney Percy Squire on the two litigation matters recognized by the court as beneficial to the guardianship.[3] S P claims the court's award should have been in the amount of $195,757.50, not the $84,474 actually awarded. S P assigns three errors for our review.
 {¶ 29} S P argues that Pierre-Louis, as custodian of the records, testified to the accuracy of the invoices for the litigation matters approved by the court including *Page 13 
the time expended by Percy Squire. It argues that Percy Squire's testimony was not necessary and that the trial court impermissibly relied upon Squire's deposition testimony after that testimony was ruled inadmissible by the court.
 {¶ 30} We disagree with S P's assertion that the court relied upon the deposition testimony in making its decision to exclude time attributed to Percy Squire in the invoices. The record reflects that even without the deposition testimony, the probate court had concerns over the accuracy of the billing statement and many of the entries listing time for attorney Squire.
 {¶ 31} During the hearing, the court noted that the entries for Squire were identical in wording to the entries of Pierre-Louis, but the time shown for Squire was significantly more than that shown for Pierre-Louis. For example, the court noted, "it just seems sort of unusual that research immunity of state officials, two hours. He took six. Research the file, you took one, he took four. And that's not unusual. That's throughout this entire billing statement." Additionally, Pierre-Louis' own testimony demonstrates that he could not attest to the accuracy of the time entries attributed to Squire. When asked whether he knew if Squire started with a copy of his statements and then just filled in the blanks to add his time, Pierre-Louis replied, "I don't know. I mean, that's — if Percy did that, he did it. I don't know." The court found that without Squire's testimony, it could not give credence to Squire's time as shown on the submitted billing records. *Page 14 
 {¶ 32} As previously noted, the decision to allow reasonable attorney fees is a matter left within the sound discretion of the probate court. The term "abuse of discretion" means more than a mere error of law or judgment; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. The record in this case fails to reflect that the probate court abused its discretion in denying fees for time attributed to attorney Squire in the fee award. Assignments of error one and two are overruled.
 {¶ 33} In the third and final assignment of error, S P asserts that the probate court erred when it denied S P's request for additional legal fees incurred in the prosecution of the underlying claim. S P argues that since the probate court approved legal expenses in excess of $17,000 for the guardianship to oppose the underlying claim for fees, the court should award S P legal fees incurred in successfully pursuing such claims. The record reflects that the guardianship filed its application for attorney fees on September 29, 2006. The application was heard and granted without objection on December 1, 2006.
 {¶ 34} There is nothing in the record to indicate that S P made application to the probate court for allowance of additional fees with regard to its prosecution of its attorney fee claim. The only reference to additional fees in the record is in S P's proposed findings of fact submitted to the probate court on September 29, 2006, in which it proposes the court adopt its final finding as follows: *Page 15 
 {¶ 35} "72. Further, the Court hereby orders payment of reasonable attorney fees to P A in connection with its legal representation of Movant's interest in this pending matter since February 10, 2006 pursuant to Brady, 2006-Ohio-2212, _7. P A shall submit an itemized statement of legal services since such date to this Court, and such order shall continue throughout the pendency of any appeal of this matter."
 {¶ 36} We find S P's reliance on the Brady decision to be unfounded. That case involved an appeal of the award of attorney fees to a court-appointed guardian. The appellate court affirmed the award of fees finding that the guardian had provided competent and credible evidence to support his request for attorney fees in representing the estate.
 {¶ 37} In the case at bar, S P seeks attorney fees incurred in litigating its application for fees. In an application for attorney fees, the burden is upon the attorney seeking fees to introduce into the record sufficient evidence of the services performed and of the reasonable value of such services in order to justify an award of attorney fees. In re Estate of Verbeck, 173 Ohio St. 557. S P cites to no authority in law for the proposition that the probate court had authority to award it additional fees for having incurred legal fees and expenses in satisfying that burden of proof. S P's final assignment of error is overruled.
 {¶ 38} The judgment of the trial court is affirmed.
 Costs to be divided equally. *Page 16 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas ? Probate Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, JUDGE
JAMES J. SWEENEY, P.J., and MARY EILEEN KILBANE, J., CONCUR
[1] Two separate appeals were filed in this matter and have been consolidated. In case no. 89113, the appellant is Carl Hughes, guardian of the estate of Martin Hughes and in case no. 89126, the appellant is Squire Pierre Louis, LLC. To avoid confusion, the parties will be referred to as in the first appeal. 
[2] In Re Guardianship of Martin Hughes, Jr., Case No. 2003 GDN 0075949.
[3] S P is not appealing the denial of fees on the three remaining litigation matters. *Page 1